UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| CREAMUS PAXTON HOWARD, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:05-cv-91 |
| ) | |
| v. ) | Honorable Richard Alan Enslen |
| ) | |
| CAROL HOWES, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.   Factual allegations

Plaintiff is incarcerated in the Florence Crane Correctional Facility (ACF). He sues Carol Howes, the Warden at ACF, and Patricia Caruso, the Director of the Michigan Department of Corrections ("MDOC") and unknown parties.

Plaintiff's first claim concerns his termination from his job assignment. From October 2004 to February 2005, Plaintiff worked as the Chief Clerk in the religious department. On February 20, 2005, Plaintiff and the other four prisoners employed in the religious department were laid-in pending an investigation. At the request of Inspector Vest, Plaintiff was terminated from his job assignment for "security reasons." Plaintiff was denied a new clerk assignment, but was approved for a tutor assignment. Plaintiff contends that he was terminated from his clerk position and classified as a "security concern" without a hearing in violation of his due process rights. Plaintiff filed a grievance concerning his termination and pursued it to Step III.

Next, Plaintiff claims that he was deprived of $13.50 in violation of his due process rights. In late May or early June 2004, Plaintiff submitted a disbursement request for $13.50 to purchase three chicken wing dinners being sold by the Prisoner Benefit Fund (PBF). The funds were removed from Plaintiff's account on June 16, 2004, and the dinners were to be delivered on June 24, 2004. Petitioner was unexpectedly hospitalized with pneumonia from June 22 to 25, 2004. When Plaintiff returned from the hospital, he was informed that his dinners had been disposed of. Assistant Deputy Warden Beckwith told Plaintiff that she would ask Business Manager Pat Schmidt to refund Plaintiff for the dinners. When the credit did not appear on his account, Plaintiff filed a grievance. The Step I grievance response indicated that Plaintiff would not receive a refund because the $13.50

was considered a donation to the PBF, and that the PBF expended funds to make the meals available to Plaintiff on June 24, 2004.  Plaintiff pursued his grievance to Step III.  Jim Armstrong, the Step III respondent, indicated that Plaintiff did not meet the criteria for reimbursement from the State Administrative Board because Plaintiff could not show a violation of policy.

Plaintiff also claims that he was improperly charged a $5.00 medical co-payment in violation of his due process rights.  The Health Care Request form indicates that Plaintiff sent a medical kite on July 3, 2004 and was seen in health care on July 7, 2004.  At the time of Plaintiff's visit on July 7, health care staff determined that Plaintiff should be charged a $5.00 co-payment in accordance with MICH. DEP'T. OF CORR., Policy Directive 03.04.101.  According to the form, Plaintiff refused to sign the form to accept the co-payment charge.  Plaintiff contends that he is a chronic care patient and meets an exception from medical co-payments, but does not recall having a health care appointment on July 7, 2004.  A Notice of Intent to Conduct an Administrative Hearing was issued on September 22, 2004, regarding the co-payment charge.  Following an administrative hearing conducted on October 21, 2004, Assistant Resident Unit Officer Rogers concluded that Plaintiff was seen by health care on July 7, 2004, and would be assessed the $5.00 co-payment.  Plaintiff contends that his due process rights were violated as the result of the long delays between the date of the alleged appointment, the notice and the hearing, and because he had not received requested documents to support his contention that he did not go to health care on July 7.  Plaintiff further claims that his "due process rights were disregarded in a [sic] apparent retaliation for previously successful grievances in which the co-pay had to be reversed."  Plaintiff unsuccessfully grieved the co-payment charge and appealed it to Step III.

II.     Exhaustion of administrative remedies

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.[1] *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). In addition, a prisoner must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

---

[1] To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. LCIVR 5.6(a). Plaintiff has chosen to forego use of the form complaint in this action.

The MDOC provides a three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective Apr. 28, 2003). As set forth above, Plaintiff filed grievances concerning his claims and appealed them to Step III. However, neither Defendant Howes nor Defendant Caruso was mentioned in any of the grievances. Because Plaintiff did not specifically mention Defendants Howes and Caruso in his grievances, he has failed to exhaust his administrative remedies against them. *See Curry*, 249 F.3d at 505; *Thomas*, 337 F.3d at 735; *Vandiver*, 2002 WL 31166925, at *2.

Dismissal of an action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). However, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown*, 139 F.3d at 1103. Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court will dismiss his action without first requiring Plaintiff to exhaust his claims against the named Defendants.

### III.   Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under

- 5 -

color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a vehicle for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As an initial matter, Plaintiff fails to make specific factual allegations against Defendants Howes and Caruso, other than the denial of his grievances. A claimed constitutional violation must be based upon active unconstitutional behavior. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id.*; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to demonstrate that Defendants Howes and Caruso engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them. Even if Plaintiff specifically asserted his claims against Defendants Howes and Caruso, he fails to state a claim for the reasons set forth below.

### A. **Job Termination**

Plaintiff claims that he was terminated from his clerk position and classified as a "security concern" without a hearing in violation of his due process rights. The Sixth Circuit Court of Appeals has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o

prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).  Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Plaintiff also complains that the wording of the termination order, stating that he was "removed for security concerns," violated his due process rights.  Plaintiff has no constitutional right to any particular placement or security classification.  "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).  A change in security classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997).  In this case, Plaintiff was merely reclassified to another job; his security classification was not modified or increased as the result of his termination.  Moreover, according to Classification Director Slagter, the termination order containing the objectionable language was not made part of Plaintiff's permanent record.  The Program Classification Report, which was placed in Plaintiff's institutional file, stated that he was "Reclassified per Institutional Need."  Because Plaintiff's allegations fail to implicate a protected liberty interest, he fails to state a due process claim.

B.     **Disbursement for Chicken Wing Dinners**

Plaintiff alleges that his due process rights were violated when he was charged $13.50 for chicken wing dinners that he ordered from the BPF but did not receive because he was in the hospital on the delivery date. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon an unauthorized deprivation of property, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process claim. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112 ¶ II(B) (effective Sept. 24, 1998). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112 ¶ II(B). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments,

commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a); *see Green v. State Corr. Dep't*, 192 N.W.2d 491 (Mich. 1971) (state liable for tortuous injury sustained by a sentenced convict at the Detroit House of Correction). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Even if Plaintiff cannot seek reimbursement through the State Administrative Board as stated in the Step III grievance response, he does not allege the remaining state post-deprivation remedies are inadequate. Accordingly, Plaintiff's due process claim will be dismissed.

### C. Medical Co-Payment

Plaintiff claims that he was improperly charged a $5.00 medical co-payment in violation of his due process rights. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. *See, e.g., Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Plaintiff

received an administrative hearing before the $5.00 medical co-payment was charged to his account. Although Plaintiff disputes the decision of the hearing officer, the hearing was adequate to protect his due process rights. Plaintiff, therefore, fails to state a claim for violation of his due process rights.

Plaintiff further claims that his "due process rights were disregarded in a [sic] apparent retaliation for previously successful grievances in which the co-pay had to be reversed." In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 373, 394 (6th Cir. 1999). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Assuming Plaintiff could satisfy the first two requirements, Plaintiff's vague and unsupported assertion of retaliation is insufficient to satisfy the third requirement.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984) ("[A]lleging merely the ultimate fact of retaliation is insufficient."); *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th

Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has alleged no facts to support his conclusion that the co-payment charge was retaliatory. Accordingly, his speculative allegation fails to state a claim for retaliation.

### Conclusion

Having conducted the review now required by the PLRA, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

DATED in Kalamazoo, MI:  /s/ Richard Alan Enslen
October 5, 2005  RICHARD ALAN ENSLEN
SENIOR UNITED STATES DISTRICT JUDGE